616 A.2d 660

**Buffie Marie CARROLL, Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued July 14, 1992.

Filed Sept. 30, 1992.

Reargument Denied Dec. 4, 1992.

Petition for Allowance of Appeal Denied Feb. 12, 1993.

Mark C. Labrum, Philadelphia, for appellant.

Bradley H. Kane, Philadelphia, for appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

We are asked to review the order of the Court of Common Pleas of Philadelphia County granting the Petition to Vacate the Award of Arbitrators by the plaintiff/appellee, Buffie Marie Carroll.[1] We reverse.

Our examination of the record produces the following account: On August 15, 1988, the plaintiff was involved in an accident with an uninsured vehicle while operating an automobile owned by her mother, Sharon Carroll. The mother's automobile was covered by State Farm Mutual Automobile Insurance Company, which disputed the plaintiff's claim under the uninsured motorist clause on the ground that the plaintiff did not reside with the named insured/mother at the time of the accident.[2] This prompted the claimant to pursue recovery under the arbitration provision of the policy.[3]

---

1. This order was dated March 8, 1991, and also directed a remand to the arbitrators to permit the plaintiff to stack the limits of recovery under her mother's three policies with State Farm.

 The initial award granted the plaintiff $25,000 under the limits of just one of the three policies. However, the final award of the arbitrators issued on July 9, 1991, was for $45,000 and was a direct result of the court's March 8, 1991, remand order, which was reduced to judgment by the prothonotary on praecipe by the plaintiff on July 18, 1991. See note 12, Infra.

2. The applicable clause, located in the Uninsured Motorist Vehicle—Section III—portion of the policy, reads in relevant part:

 We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**....

 \* \* \* \* \* \*

 **Who Is an Insured**
 Insured—means the **person** or **persons** covered by uninsured motor vehicle and underinsured motor vehicle coverage.
 This is:
 1. the first **person** named in the declarations;
 2. ...;
 3. their **relatives**; and
 4. ...[.]
 The term "relative" appears in the "defined words" section of the policy and reads:

 Relative—as used in sections I, III, IV and V means a **person** related to **you** or **your spouse** by blood, marriage or adoption who lives with **you**. It includes **your** unmarried and unemancipated child away at school.

3. The provision reads:

Prior to the arbitration hearing, counsel stipulated that three policies were issued to Sharon Carroll by State Farm, each having a minimum of $25,000 of uninsured motorist coverage. All were less than the $100,000 of liability coverage available to Sharon Carroll on the vehicle the plaintiff was operating at the time of the accident.[4] See Plaintiff's Petition to Vacate Award of Arbitrators at Paragraph 11.

Following a hearing, an award was entered limited in amount to $25,000. Next, a Petition to Vacate Award of Arbitrators was submitted by the plaintiff in which she alleged, in relevant part, that:

12. On October 27, 1990, an arbitration hearing was held.

13. Subsequent thereto, the award of the arbitrators entered a finding holding that they were limited in awarding damages in the amount of $25,000.00, due to the fact that [the plaintiff] was not entitled to stack the other two (2) policies of insurance. Attached hereto and marked Exhibit "E" is a true and correct copy of the Arbitrators' holding.[5]

14. ... counsel for plaintiff ... (the minor daughter of Sharon Carroll, the owner of the vehicle [the plaintiff] was operating who had joint custody of [the plaintiff] pursuant to a divorce decree) submits that the arbitrators erred as a matter of law, in holding that [the plaintiff] was not entitled to stack uninsured motorist benefits.

In a Memorandum of Law attached to the Petition to Vacate, the plaintiff asserted that the arbitration panel (in a two to one) decision) "held that [she] was not entitled to stack uninsured motorist coverage since a child of divorced parents

If there is no agreement [with regard to whom is considered an **insured**], th[is] question[ ] shall be decided by arbitration at the request of the **insured** or us. The Pennsylvania Uniform Arbitration Act, as amended from time to time, shall apply.

4. State Farm stipulated that it possessed written waivers from Sharon Carroll in which she elected to take uninsured motorist coverage in the amount of $25,000 as opposed to $100,000 of coverage afforded in the liability portion of the policy covering the vehicle driven by the plaintiff. See Plaintiff's Petition to Vacate Award of Arbitrators at Paragraph 11; Plaintiff's Memorandum of Law at page 2.

5. The face-sheet of the arbitrators' award makes no mention of the rationale for limiting the plaintiff's recovery to $25,000.

could not be considered a class one insured." [6] Further, in the argument section of the Memorandum of Law, the plaintiff averred:

At the [arbitration] hearing of October 27, 1990, the uncontrovered [*sic* ] testimony submitted to the panel of arbitrators was that plaintiff . . . was 17 years old on the date of the accident and born on August 20, 1971. Furthermore, plaintiff . . . stated at the arbitration that her parents were divorced on the date of the accident and that she lived with her father, Monday through Friday during the school year but during the summer months, when the accident occurred, she lived primarily at her mother's house. Furthermore, plaintiff . . . testified that on the date of the accident, she had a Pennsylvania driver's license which indicated her residence at her mother's house. In addition, [the plaintiff's] mother testified at the arbitration hearing, that on the date of the accident, as a result of divorce proceedings, the Court ordered that Sharon Carroll and her former husband, be awarded joint custody of their minor child plaintiff. . . .

The Petition to Vacate also had attached to it a claim form (Exhibit "B") which indicated the plaintiff's address as 2001 Society Place, Newtown, Pennsylvania, the same address as her mother's. Accord Exhibit "D". Lastly, in Exhibit "G" of the Petition to Vacate, the plaintiff set forth what had transpired, allegedly, before the panel of arbitrators; to-wit:

In the case before the panel, plaintiff lived with her mother at the time of the said accident. Plaintiff stated in her deposition, that she lived with her father Monday through Friday during the school year, but that she lived with her mother during the summer. (See Plaintiff's Deposition at page 11).[7] Furthermore, plaintiff has a Pennsylvania Driver's license.

* * * * * *

6. This is at odds with established case law. For instance, a "class one" insured has been defined as a named insured and, while residents of the same household, the spouse and relatives of the named insured. See *Utica v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005, 1010 (1984).

7. No such deposition was made a part of the record transmitted to this Court.

The fact that plaintiff resided with her mother for a substantial period of time, establishes her status as a "resident".[8]

In response, State Farm filed an Answer in which it denied, with explanation, the allegations of the plaintiff in Paragraphs 13 and 14, supra, of her Petition to Vacate. Attached to State Farm's Answer was a Memorandum of Law, wherein it was averred:

The issue in the case, among other issues, was whether [the plaintiff] was a resident of the household of her mother. If she [wa]s ... considered a resident of the household of her mother at the time of the accident, she would be entitled under Pennsylvania law to stack the coverages under all three policies. If she was not a resident of the household of her mother, then she would not be permitted to stack the coverages and would be limited to the $25,000 of uninsured motorist benefits covering the vehicle which she was operating.

At the Arbitration Hearing, it was established that the motor vehicle accident occurred in Delanco[,] New Jersey. At that time, [the plaintiff] was living with her father in New Jersey. All of the medical records submitted to State Farm list the address of the claimant, [the plaintiff] as that of her father Michael Carroll in Delran[,] New Jersey. All of her medical treatment was performed by physicians and hospitals in New Jersey near the home of her father in Delran. In fact, at the time of the accident, [the plaintiff] testified that she was working at a pizza parlor in Delran[,] New Jersey five or six days a week while living with her father. Based on these facts, the majority of the arbitration panel determined that [the plaintiff] resided with her father and was not a resident in the household of her mother at the time of the accident. Therefore, the panel found that she was not entitled to stack the coverages on the other vehicles in the household of her mother.

8. There was no "affidavit" executed by the plaintiff or her counsel at the end of this document to create the solemnity necessary to treat such matter as given under oath.

Moreover, State Farm argued that the arbitrators found, as a question of fact, that the plaintiff "did not live with her mother at the time of the accident. Therefore, the panel found ... that she was not entitled to stack the coverages...."

 Upon a review of the parties' pleadings, the court vacated the arbitrators' award and remanded to "permit [the plaintiff] to stack uninsured motorist coverages...." [9] The arbitrators complied with the March 8th order and awarded the plaintiff $45,000 on July 9, 1991. The July 9th order was reduced to judgment on July 18, 1991, upon praecipe by counsel for the plaintiff. See note 12, infra. Thereafter, State Farm filed a Petition to Vacate the Award of Arbitrators Dated July 9, 1991 and Reinstate the Award of Arbitrators Dated October 27, 1990. [10] The petition was denied by order of court dated October 18, 1991, which decreed that the July 9th award was "confirmed and [the] same shall be entered on the [judgment] docket th[e same] date[.]" [11] State Farm filed a timely appeal from the final judgment entered with respect to

9. This March 8, 1991, order was appealed to Superior Court, but, thereafter, it was "discontinued" by State Farm.

10. The initial award of the arbitration panel was dated November 9, 1990.

The plaintiff filed a Reply to Defendant's Petition to Vacate in which she disputed State Farm's assertions that the arbitrators ruled she "did not qualify as a resident relative" of the named insured. In particular, the plaintiff wrote:

4. ... It is denied specifically ... that at the arbitration hearing, the panel of arbitrators was asked to determine whether Plaintiff ... qualified as a resident relative of her mother ... thereby allowing her to stack on the insured motorist coverages available in three (3) policies of insurance issued by ... State Farm....

5. ... It is specifically denied that following a full and fair hearing, the uninsured motorist arbitration panel ruled that Plaintiff ... did not qualify as a resident relative of her mother ... and therefore was not entitled to stack motorist coverages.... By way of further denial, the award implied from the evidence submitted to the arbitration panel[ ] that the [seventeen-year-old] minor daughter of Sharon Carroll, the owner of the vehicle [the plaintiff] was operating who had joint legal custody of [the plaintiff] pursuant to a Court Ordered divorce decree was not permitted to stack her mother's uninsured motorist coverage.

11. In point of fact, the July 9, 1991, award of the arbitrators was not entered on the judgment docket until October 24, 1991. Nevertheless, State Farm's appeal was still timely.

the order of October 18th confirming the arbitration award.[12] See *Seay v. Prudential Property and Casualty Ins. Co.*, 375 Pa.Super. 37, 543 A.2d 1166, 1168 (1988), appeal dismissed, 523 Pa. 105, 565 A.2d 159 (1989).

At first, we will address State Farm's complaint that the court below erred in reversing the arbitration panel's initial award by order dated March 8, 1991, and remanding to allow the plaintiff to stack her mother's policies covering three separate vehicles on grounds that the court exceeded its authority in doing so and proceeded in the absence of any evidence to substantiate its actions.

 It is undisputed that the policy issued provided for arbitration pursuant to the Uniform Arbitration Act of 1980, P.L. 693, No. 142, § 501(a), 42 Pa.C.S.A. § 7301 et seq., which covers matters concerning the uninsured motorist provisions of the contract. Such being the case, the standard of review in statutory arbitration cases can be found in Section 7302 of the Act: [13]

**12.** The October 18, 1991, order is "[a] court order confirming ... an award" issued by the arbitrators on July 9, 1991. See 42 Pa.C.S.A. § 7320(a)(3). As such, the Section 7320(a)(3) status of the order of October 18th required that it be reduced to judgment first before it could be appealed. This is mandated by 42 Pa.C.S.A. § 7316, i.e., final judgment is to be entered with respect to an order "confirming" an arbitration award, and that is what occurred instantly to render the appeal timely. See *Seay v. Prudential Property and Casualty Ins. Co.*, 375 Pa.Super. 37, 543 A.2d 1166, 1168 (1988), appealed dismissed, 523 Pa. 105, 565 A.2d 159 (1989).

For clarification purposes, we note that plaintiff's counsel's Praecipe to Entry Judgment of the Award of Arbitrators issued July 9, 1991, with the prothonotary was an incorrect procedure by which to cause the arbitration award to be considered enforceable *and* final for appeal purposes.

Counsel for the plaintiff should have complied with the dictates of 42 Pa.C.S.A. §§ 7313 and 7314(d) to cause a confirmation of the arbitrators' award. See *Dunlap by Hoffman v. State Farm Ins.*, 377 Pa.Super. 165, 546 A.21d 1209, 1211 (1988). In the absence of such action by the plaintiff's counsel, State Farm's appeal following the confirmation of the arbitrators' award of July 9, 1991, by order of court dated October 18, 1991, and reduced to judgment thereafter, was a proper course to pursue in perfecting a timely appeal. See *Seay,* supra.

**13.** Counsel for State Farm argues that, albeit the uninsured motorist arbitration hearing was held under the Uniform Arbitration Act of 1980,

§ 7302. Scope of subchapter

(a) General rule.—An agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter or any other similar statute, in which case the arbitration shall be governed by this subchapter.

\* \* \* \* \* \*

(d) Special application.—

(1) Paragraph (2) shall be applicable where:

(iii) Any person has been required by law to submit to or to agree to submit a controversy to arbitration pursuant to this subchapter.

(2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

Accordingly, contrary to the position taken by State Farm, the court below was utilizing the proper standard of review to assess a challenge to the arbitration award, i.e., the "contrary to law" criterion detailed in . Section 7302(a) & (d). See generally *Geisler v. Motorists Mut. Ins. Co.*, 382 Pa.Super. 622, 556 A.2d 391, 392 (1989).

the standard of review when assessing an award rendered as a result thereof is that set forth in 42 Pa.C.S.A. § 7341. See Reproduced Record at 85a–86a, 97a and 202a; Appellant's Brief at 21. We disagree.

Section 7341 relates specifically to common law arbitration, where vacation of an award is permissible only where there was a "denial of a hearing on fraud, misconduct, corruption, or similar irregularity leading to an unjust, inequitable, or unconscionable award." *Runewicz v. Keystone Ins. Co.*, 476 Pa. 456, 461, 383 A.2d 189, 192 (1978); *Harwitz v. Adams*, 406 Pa. 539, 178 A.2d 617 (1962); *Bowdren v. Aetna Life & Cas.*, 404 Pa.Super. 595, 591 A.2d 751, 753 (1991). Thus, we need not look to Section 7341 as proposed by State Farm. See *Bowdren*, supra.

■ Unlike State Farm, we find that a determination of the plaintiff's "residence", so as to trigger the stacking provisions once a claimant is found to be a "class one" insured, was *not a question of fact* precluding the court below from making inquiry of the award. See State Farm's Brief at 9. Rather, the definition of "resident" and the scope of coverage under multiple vehicle policies were *questions of law*. Cf. *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005, 1007–1008 (1984) (". . . definition of 'occupying' and the extent of coverage under multiple vehicle policies [a]re questions of law * * * [W]here a contract exists without a history of bargaining over the terms, the construction of individual terms of that contract [of insurance] is a question of law." (citations omitted)); *State Farm Mut. Auto. Ins. Co. v. Williams*, 481 Pa. 130, 139, 392 A.2d 281 (1978) (Question of stacking coverages is clearly one of law). Therefore, it was proper for the court of common pleas to review the conclusions of the arbitrators. *Utica*, supra.

■ However, the court below erred in issuing its March 8, 1991, order vacating the arbitrators' award of $25,000 to the plaintiff in the face of *no* evidence to conclude that she, under the terms of the policy of insurance although a "relative" of the named insured/mother, was a "resident" of the named insured's household.[14] The law is quite clear on this point.

Under *Utica*, supra, the Court allowed the decedent's estate to assail an arbitration award on the ground that the denial of stacking was in error inasmuch as the decedent came within the ambit of "class one" coverage of the policy embracing multiple vehicles, i.e., he was a "relative"/son of the named insured *and* resided in the same household. As a result, the decedent's estate was permitted to stack coverages and collect

14. The policy issued by State Farm conditioned uninsured motor vehicle coverage upon the claimant being, *inter alia*, a "relative" of the named insured. See Reproduced Record at 57a. In turn, "relative" was defined in the policy as "a person related to you or your spouse by blood, marriage or adoption who lives with you." Id. at 46a. Qualification under such a dual test—relative *and* resident with named insured—label a claimant a "class one" insured entitling him/her to stack. See *Utica*, supra; *Bowdren*, supra.

the full amount under the father's single policy insuring three vehicles, even though he was designated as a driver on only one of the three vehicles.

The Supreme Court had *facts* before it, which included an Answer to the decedent's petition to vacate by Utica "admitting" to the decedent's "insured" status that facilitated and substantiated the ultimate ruling. Such was not the case at bar.

For example, unlike in *Utica,* supra, we have no transcript of the arbitration hearing even though either side had the option to have one made. See 42 Pa.C.S.A. § 7307(b); Pa. R.Civ.P. 1304(c). Nor do we have pleadings in which State Farm *admits* the "residence" of the plaintiff with her mother/named insured. On the contrary, as recounted supra, the record is replete with instances in which the plaintiff and State Farm dispute the others allegations of fact as to both the issue posed to the arbitrators for resolution and the substance of the arbitration hearing. Most glaring of these irreconcilable pleadings is the plaintiff's denial that the arbitrators "ruled" that she was not a resident of her mother's home. See Plaintiff's Reply to State Farm's Petition to Vacate at Paragraphs 4 and 5. "To the contrary, the arbitrators expressly ruled that Buffie Marie Carroll was not entitled to stack as she could not be classified as a class one insured *implying* that an unemancipated minor whose parents were given joint custody, could only have one (1) residence and because a majority of the year was spent at her father's house (weekdays during the school years and weekends during the summer months), she was not entitled to stack." Plaintiff's Brief at 10 (Emphasis added).

As is evident from the preceding, the account of the plaintiff is presented in her brief, a factor which undermines our ability to place any credence in that which is asserted therein. See *McCormick v. Allegheny General Hospital,* 364 Pa.Super. 210, 527 A.2d 1028 (1987). Even if such were not the case, the plaintiff fails in her effort to inform the Court of the *basis* for the arbitrators' award. In fact, she recommends that we "imply" from the award issued the underlying rationale for the

arbitrators' actions. This is not consistent with either law or logic. Cf. *Starr v. Zdrok*, 419 Pa.Super. 60, 614 A.2d 1209, 1212 (1992) (An appellate court must evaluate the actions of the court below from the facts in the record certified to it for review; matters *de hors* the record have no efficacy on the appellate court's ruling).

Therefore, because there were no *uncontradicted* pleadings of either the issue ruled upon by the arbitration panel and/or an account of what took place before the panel, the court below was without any record evidence and/or admission which would have permitted it to reverse the arbitrators' initial award. Thus, the court's reference in its opinion that: "The Arbitrators found that [the plaintiff] was not a resident of her mother's household ... because, at the time of the accident, [the plaintiff] was living in the household of her father" is unsubstantiated by *record* evidence. Ergo, it may not stand. Cf. *Starr*, supra; *Whitt v. Phila. Housing Auth.*, 325 Pa.Super. 135, 472 A.2d 684, 689 (1984).

■ And, the plaintiff's discussion in the pleadings to a custody order resulting in her spending part of her time with each parent, see Plaintiff's Reply to State Farm's Petition to Vacate at Paragraph 6, was disputed by State Farm. See Memorandum of Law attached to State Farm's Answer to Plaintiff's Petition to Vacate at 2. Moreover, the court below would have been precluded from taking judicial notice of the custody order in the absence of a request to do so or either party admitting without objection to any such order in their pleadings. Cf. *Woolward v. Burton*, 345 Pa.Super. 366, 498 A.2d 445, 448 (1985) ("a court is admonished not to take judicial notice of the record of another case, if not pleaded." (Citations omitted)). Neither scenario occurred before the court below. As such, the court acted *ultra vires, id.*, which necessitates a reversal of the order reaffirming the July 9, 1991, award of the arbitrators in the amount of $45,000 in favor of the plaintiff. See Reproduced Record at 208a. The plaintiff will not be heard to complain since she had the opportunity to create a stenographic record of the arbitration hearing to permit a *proper* inquiry into her allegations of

error. See *City of Scranton v. Shoemaker*, 59 Pa.Cmwlth. 141, 428 A.2d 1048 (1981). Her failure to do so is fatal.

Given the state of the record, we hold that the court below acted without foundation in law and fact to reverse the arbitrators' award and remand to stack plaintiff's coverages under her mother's policy. The award in favor of the plaintiff for $25,000 should have remained as entered initially by the arbitrators.

Order reversed; case remanded for entry of judgment as herein directed; [15] jurisdiction is not retained.

15. See 42 Pa.C.S.A. § 706, which authorizes this Court to direct that on remand judgment in the amount of $25,000 be entered in favor of the plaintiff.