**ERIE INSURANCE EXCHANGE,**
Appellee

v.

**David A. WERYHA, Rita S. Weryha, individually and as the Administratrix of the Estate of Timothy A. Weryha, Deceased and as the Parents and Natural Guardians of Steven A. Weryha and Samanthalyn M. Weryha; Alex Weryha and Heidi Weryha, Husband and Wife; and American Manufacturers Mutual Insurance Company, Appellants.**

Superior Court of Pennsylvania.

Argued June 26, 2007.
Filed Aug. 20, 2007.

Thomas V. Myers, Erie, for appellants.

Craig R.F. Murphey, Erie, for appellee.

BEFORE: ORIE MELVIN, TAMILIA and JOHNSON, JJ.

OPINION BY TAMILIA, J.:

¶ 1 David A. Weryha and Rita S. Weryha appeal, both in their individual capacities and on behalf of their children, with Mrs. Weryha also acting in her capacity as an administratrix of decedent Timothy Weryha's estate, from the trial court's September 15, 2006, Order granting appellee Erie Insurance Exchange's (Erie) motion for summary judgment in this declaratory judgment action.

¶ 2 The background of this case is not in controversy. On June 12, 2001, Timothy Weryha was killed while attempting to cross the road in front of his residence in Erie County after being struck by a vehicle driven by Lindsay S. Bedrow. Mrs. Weryha, and two of her other children-Steven and Samanthalyn, regrettably witnessed the tragic accident. Subsequently, the Weryhas reached a settlement with Bedrow's insurance carrier. Mrs. Weryha was also able to settle her underinsured motorist claim under a policy issued by Erie.

¶ 3 When appellants submitted an underinsured motorist claim under Mr. Weryha's policy with Erie, however, he was notified coverage did not lie because Timothy was neither a named insured nor a "resident" as defined within Mr. Weryha's policy. Record, No. 6, Complaint for Declaratory Judgment, Exb. A, Pioneer Family Auto Insurance Policy, at p. 4. At the time of the accident, Mr. and Mrs. Weryha were separated and Mr. Weryha had moved in with his parents in Oil City— some 60 miles away from Erie.

¶ 4 On October 23, 2003, Erie initiated the underlying proceedings by filing a complaint seeking a declaration that Mr. Weryha was not eligible to recover underinsured motorist benefits for Timothy's death. Record, No. 6. On June 27, 2006, after a considerable period of inactivity in the case, Erie filed a motion for summary judgment and a brief in support thereof. The trial court carefully considered the issue of Timothy's residency and, subsequently, issued the Order now under consideration wherein it concluded Timothy did not reside with Mr. Weryha at the time

of the accident and, therefore, was not covered under Mr. Weryha's policy. This timely appeal followed.

¶ 5 Appellants raise the following issues for our review:

1. Whether the trial court erred in finding the Weryha family is barred from recovering under David Weryha's policy because his son did not physically live with him at the time of his death and thus was not a resident as defined by the applicable insurance policy?

   A. The terms "relative" and "resident" are ambiguous, vague and capable of being understood in more senses than one.

   B. The definition of resident in Erie's policy is void because it impermissibly conflicts with the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701, *et. seq.*

   C. Timothy Weryha was a resident of his father's "household" based on the significant and consistent amount of family time spent with his father and in his "household."

2. Whether the trial court committed an error of law in not finding that Timothy Weryha was an insured under the David A. Weryha policy because Timothy Weryha was an unmarried, unemancipated child under the age of 24, attending school full-time and living away from home?

3. Whether the trial court committed an error of law in finding that the plaintiff did not violate the defendant's reasonable expectations of receiving UIM coverage for his dependent minor children?

Appellants' brief at ii.

¶ 6 Our standard of review over an Order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co.*, 908 A.2d 344, 347 (Pa.Super.2006), *citing Chenot v. A.P. Green Servs. Inc.*, 895 A.2d 55, 60–62 (Pa.Super.2006). Our scope of review is plenary. *Id.* at 346. In analyzing a trial court's grant of summary judgment, we apply the same rule of law employed by the trial court—namely, we review all of the evidence in the light most favorable to the non-moving party while resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.* at 346–347. We will only sustain a grant of summary judgment when it is clear no genuine issue of material fact exists such that the moving party is entitled to judgment as a matter of law. *Id.* at 347.

¶ 7 All parties agree that the heart of this dispute centers on the following language contained in Mr. Weryha's policy:

**DEFINITIONS**

. . .

- "relative" means a **resident** of **your** household who is:
   1. a person related to **you** by blood, marriage or adoption, or
   2. a ward or any other person under 21 years old in **your** care.

- "resident" means a person who physically lives with **you** in **your** household. **Your** unmarried, unemancipated children under age 24 attending school full-time, living away from home will be considered **residents** of **your** household.

. . .

**OUR PROMISE**

If Underinsured Motorists Coverage is indicated on the **Declarations, we** will pay damages for bodily injury that the law entitles **you** or **your** legal represen-

tative to recover from the owner or operator of an **underinsured motor vehicle**....

. . .

**OTHERS WE PROTECT**

1. Any **relative.**

. . .

Record, No. 6, Complaint for Declaratory Judgment, Exb. A, Erie Insurance Exchange Pioneer Family Auto Policy.

¶ 8 Erie Exchange, and the Defense Institute as *amicus curiae,* contend Timothy was not a "resident" of Mr. Weryha's home at the time of the fatal accident and, consequently, cannot be defined as a "relative" for purposes of underinsured motorist coverage under the policy. Appellants, and the Pennsylvania Trial Lawyers Association as *amicus curiae,* contend the trial court erred in finding Timothy was not a "relative" under Mr. Weryha's policy as a matter of contract interpretation, statute, and public policy.

¶ 9 The Weryhas first argue the terms "relative" and "resident" are ambiguous and, as a consequence, the terms must be construed in their favor. Appellants' brief at 10, *citing Mohn v. American Cas. Co. of Reading,* 458 Pa. 576, 326 A.2d 346, 351 (1974). The central tenet of their argument is that these terms do not spell out whether a "child of separated or divorced parents may be a resident of both parents' households." *Id.* at 11. The trial court accepted the Weryhas' argument and determined these terms were indeed ambiguous. Trial Court Opinion, Connelly, J., 9/15/06, at 8–9.

■ ¶ 10 An insurance contract is ambiguous "if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning

through indefiniteness of expression or has a double meaning." *Pappas v. UNUM Life Ins. Co. of Am.,* 856 A.2d 183, 187 (Pa.Super.2004), *quoting Young v. Equitable Life Assurance Soc'y,* 350 Pa.Super. 247, 504 A.2d 339, 341 (1986).

■ ¶ 11 We do not find either the term "relative" or "resident" is ambiguous as a matter of law. The term "relative" refers to a blood relative or ward who is a "resident of [the insured's] household." Record, No. 6, Complaint for Declaratory Judgment, Exb. A. The term "resident" is, in turn, defined as one who "physically lives" in the insured's household. *Id.* The salient question then, which is apparent from the face of the litigants' briefs, is what constitutes *physically living* with another.

¶ 12 The question of whether one physically lives with another is a factually intensive inquiry and it requires the trial court to look at a host of factors in reaching a common-sense judgment. We do not find ambiguity in the phrase "physically lives" simply because the policy does not spell out every single factor a court should look at in making this determination. Further, the Weryhas do not set forth what factors they think should be considered; rather, they contend we should take a "qualitative" approach to determining whether Timothy physically lived with Mr. Weryha as opposed to a merely quantitative approach. *See e.g.,* Appellants' reply brief at 3, *citing Nationwide Mut. Ins. Co. v. Budd–Baldwin,* 947 F.2d 1098 (3d Cir. 1991).

¶ 13 Erie, however, does not contend the policy language requires a quantitative analysis in conducting the inquiry; instead, Erie Exchange argues Timothy's contacts with Mr. Weryha's household are not of the quantity *or* the quality that would give rise to a finding of residency under the policy. Thus, we are not con-

fronted with a situation where the parties are each advocating for a different construction of the policy language; hence, the language of the policy is unambiguous in this instance as a matter of law. *See Pappas, supra* at 187.

¶ 14 The Weryhas next argue the policy violates the Motor Vehicle Financial Responsibility Law [1] (MVFRL) by "contractually narrow[ing] the classes of individuals with the status of 'insured' " in contravention to the definition of "insured" contained within the MVFRL. Appellants' brief at 13, *citing Prudential Prop. & Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002). Specifically, the Weryhas contend the underinsured motorist policy limits the definition of "insured" by prohibiting a person with dual residences to be a named insured under the policy and, therefore, the policy definition conflicts with the MVFRL definition of "insured," which contains "no limitation ... of insured[s] from having dual residences." Appellants' brief at 13.

¶ 15 The MVFRL defines "insured" as follows:

(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.

(2) If residing in the same household of the named insured:

(i) a spouse or other relative of the named insured; or

(ii) a minor in the custody of either the named insured or relative of named insured.

75 Pa.C.S.A. § 1702, **Definitions.**

¶ 16 Erie does not contend the definition of insured in the policy prohibits dual residency and the face of the policy does not indicate such a restriction exists. A fair reading of the MVFRL definition of insured and the policy definition of insured reveals the language of the policy definition tracks the language of the MVFRL definition virtually verbatim. *See* Record, No. 6, Complaint for Declaratory Judgment, Exb. A, *accord* 75 Pa.C.S.A. § 1702. There is no defect on the face of the policy itself. We now consider the most prominent question presented by this case—whether Timothy physically lived with his father prior to the accident.

¶ 17 The issue of whether a child living under a joint custody Order can be deemed a resident of both parent's households as a matter of law is unsettled in this Commonwealth. *Amica Mutual Insurance Co. v. Donegal Mut. Ins. Co.*, 376 Pa.Super. 109, 545 A.2d 343, 348 (1988) ("Although no Pennsylvania appellate decision has yet decided the issue, we do not disagree that a child of separated or divorced parents may be regarded as a resident of the household of both parents.... Such a holding would seem appropriate ... where the child divides his time between the two.") (internal citation omitted); *see also, Carroll v. State Farm Mut. Auto. Ins. Co.*, 420 Pa.Super. 215, 616 A.2d 660 (1992); *Nationwide Mut. Ins. Co. v. White*, 1993 WL 315639 (E.D.Pa.1993) (unpublished Opinion and Order). The burden placed on insurers by this Commonwealth's case law to phrase exclusions in an unambiguous manner, or else face the consequences of failing to do so, unquestionably allows for such a possibility as a matter of law. *See generally, Pappas, supra* at 187. There is also no impediment to allowing such coverage to be explicitly bargained for.

¶ 18 In this case, however, the trial court's factual findings strongly support its ultimate conclusion—Timothy did not physically live with his father prior to

1.  75 Pa.C.S.A. § 1701, *et. seq.*

death and, therefore, was not covered under his father's underinsured motorist policy. The trial court concluded Timothy did not have a room at his father's residence, did not receive mail at his father's residence, did not eat regular meals there, did not have a key to his father's residence, did not attend school nearby, and did not spend the night on a regular basis at his father's residence. Trial Court Opinion at 12.

¶ 19 The Weryhas do not attack these findings. Instead, they point out the "amount of time that Timothy could spend at his father's residence was limited by economic circumstances preventing [Mr. Weryha] from being able to find suitable employment and live in the same locale as the marital residence." Appellants' brief at 27. They further note Timothy did not have the authority to make the decision to spend more time with his father. *Id.* at 26; *see contra, Amica Mutual, supra* at 348.

■ ¶ 20 While this all may be true, the issue in this case is whether Timothy physically lived with his father; the issue is *not* why it was impossible for Timothy to physically live with his father. Aside from sporadic visits and overnight stays, Timothy basically had no connection with his father's residence. While we do not doubt Timothy loved his father and enjoyed visiting his father, the terms "residence" and "living" require, at the minimum, some measure of permanency or habitual repetition. *See* Merriam Webster's Collegiate Dictionary 681, 996 (10th ed.1996). Consequently, we affirm the trial court's findings.

■ ¶ 21 Appellants' next argue Timothy was a resident of Mr. Weryha's home by virtue of being an "unmarried, unemancipated child under age 24 attending school full-time, *living away from home."* See Record, No. 6, Complaint for Declaratory Judgment, Exb. A (emphasis added). The problem with this argument is that it presupposes Timothy's "home" was where Mr. Weryha resided, not the Weryha family marital home where Timothy's mother resided—where Timothy did, in fact and in law, reside at the time of the accident. This presupposition is erroneous because if Timothy did not "reside" with Mr. Weryha, which we have concluded he did not, his "home" could not be where Mr. Weryha lived. *See* Merriam Webster's Collegiate Dictionary, *supra* at 554 (defining home as "one's place of residence.").

¶ 22 The Weryhas' final argument is that the trial court's decision violated the "Reasonable Expectations Doctrine" because Mr. Weryha expected his children's coverage under his underinsured motorist policy to continue after he moved away from the family. Appellants' brief at 34–35, *citing Nationwide Mut. Ins. Co. v. Nixon,* 453 Pa.Super. 70, 682 A.2d 1310 (1996). In support of this argument, the Weryhas point out that Mr. Weryha changed his coverage in April of 1999 and April of 2000 after speaking directly with his insurance agent and informing the agent he had separated from his wife and that his children's primary residence remained in the marital home. Appellants' brief at 34. Appellants conclude, on the basis of these conversations, "that the agent had a duty to alert Mr. Weryha of any concern that his changed living circumstances could limit the coverage available to his children under the policy." *Id.* at 39.[2]

2. The Weryhas do not allege Mr. Weryha was unaware of the residency restriction under his underinsured motorist coverage. *See e.g., Pressley v. Travelers Property Casualty Corp.,*

817 A.2d 1131, 1140 (Pa.Super.2003) (noting the crucial distinction in this Commonwealth's case law that exists between situations where an insured receives precisely the

¶ 23 The Weryhas' argument has superficial appeal but its conclusion is based on leaps of logic too tentative to sustain. First of all, the relevant issue is *Timothy's* living circumstances, both for purposes of this litigation and under the language of the policy itself, not Mr. Weryha's changed living circumstances. The Weryhas do not indicate that Mr. Weryha informed the agent that Timothy would not reside with Mr. Weryha in his new residence. Secondly, an insurance agent, who presumably was not an attorney, could not have been expected to make the legal inferences necessary to support the duty the Weryhas allege the agent owed on the basis of the information provided to him or her.

¶ 24 In conclusion, we find the trial court did not abuse its discretion or commit an error of law in determining Timothy did not physically live with and, therefore did not "reside," with his father prior to the fatal accident. *Mee, supra* at 347. While we are sympathetic to Mr. Weryha's economic difficulties, and more so to the family for their tragic loss, we cannot rely on these difficulties to create a legal fiction that contradicts the clear and, in most cases, undisputed facts of record. Timothy did not reside with his father and, as such, was not a relative covered under the Erie Exchange underinsured motorist policy.

¶ 25 Order affirmed.

coverage for which he bargained but fails to read and digest the policy and those situations where the insurer unilaterally limits the bargained for coverage by subsequently sending insurance papers that do not properly memorialize the agreement), *citing Tonkovic v. State Farm Mutual Automobile Insurance Co.,* 513 Pa. 445, 521 A.2d 920, 925 (1987).