**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2012
_____

THE FIRST LIBERTY INSURANCE CORPORATION

v.

PAUL MCGEEHAN; ROSANNE MCGEEHAN, HUSBAND AND WIFE;
ADAM MCGEEHAN; LAURA MCGEEHAN, HUSBAND AND WIFE,
                                                    Appellants

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1-16-cv-00199)
District Judge: Hon. Susan Paradise Baxter
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 28, 2020
_____

Before: CHAGARES, RESTREPO and BIBAS, *Circuit Judges*.

(Filed: April 21, 2020)
_____

OPINION*
_____

RESTREPO, *Circuit Judge*.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

In November 2013, husband and wife Adam and Laura McGeehan were injured in a car accident, in a vehicle covered by Adam's parents' insurance. The McGeehans claim that First Liberty Insurance Corporation owes them additional coverage for their injuries pursuant to their automobile insurance policies. The McGeehans appeal the District Court's order granting summary judgment in favor of First Liberty. We will affirm the District Court's order.

## I

On a Thanksgiving weekend visit to Erie, Pennsylvania in 2013, Adam and Laura McGeehan were injured in an automobile accident. The accident occurred blocks away from Adam's parents' house, where he and Laura were staying. At the time, Adam and Laura lived together in Virginia and both worked there as teachers. A few days prior, they had driven from Virginia to Erie in a 2004 Chevrolet Trailblazer, the vehicle involved in the accident, which was covered by Adam's parents' insurance policy. Adam's parents, Paul and Rosanne McGeehan, had two insurance policies with First Liberty—a "Four-Vehicle Policy" and a "Lincoln Navigator Policy" (the Policies). App. 156, ¶ 2–3. The Trailblazer was listed on the Four-Vehicle Policy, which included Adam as a driver.

The Four-Vehicle Policy includes an "Underinsured Motorists Coverage-Pennsylvania (Stacked) Endorsement" (UIM Endorsement). App. 526, ¶ 9. This provision provides "stacked" coverage, whereby the $300,000 limit per vehicle can be

2

multiplied by up to four—because the policy covers four vehicles—providing up to $1.2 million in potential coverage for injuries sustained in an accident. First Liberty paid Adam and Laura the $300,000 bodily injury limit for the Trailblazer but refused to apply stacked coverage. It also rejected their claim under the Lincoln Navigator Policy's UIM Endorsement, which provides $300,000 in coverage.

First Liberty denied both stacked coverage under the Four-Vehicle Policy and coverage under the Lincoln Navigator Policy based on its determination that Adam and Laura were not "family members" of Paul and Rosanne, a designation required for the disputed coverage. The parties' dispute over whether Adam and Laura were "family members," as defined by the Policies, is the issue on appeal.

On August 2, 2016, First Liberty initiated a declaratory judgment action in the District Court for the Western District of Pennsylvania, asking the court to determine its responsibilities under the two Policies. The McGeehans counterclaimed for the disputed insurance proceeds. The parties filed cross-motions for summary judgment, and the District Court granted First Liberty's motion for summary judgment and denied the McGeehans' motion for partial summary judgment. The Court found that Adam and Laura were not "family members" of Paul and Rosanne. The McGeehans timely appealed.

## II

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a), and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment and its legal interpretation of contractual language de novo. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 418 (3d Cir. 2011). We apply the same summary judgment standard as the District Court and will affirm summary judgment where, viewing the facts in the light most favorable to the nonmoving party, there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The parties agree that Pennsylvania law governs our analysis of the Policies' language.

This case turns on whether Adam and Laura are "family members" of Paul and Rosanne, as defined by the Policies. If Adam and Laura qualify as "family members," First Liberty would owe them stacked benefits under the Four-Vehicle Policy and coverage for bodily injury under the Lincoln Navigator Policy. Both Policies contain identical language limiting liability for bodily injury resulting from one accident:

> If "bodily injury" is sustained in an accident by you or any "family member", our maximum limit of liability for all damages in any such accident is the sum of the limits of liability for Underinsured Motorists Coverage shown in the Schedule or in the Declarations applicable to each vehicle. Subject to the maximum limit of liability for all damages, the

4

most we will pay for **"bodily injury" sustained by an "insured" other than you or any "family member"** is the limit of liability shown in the Schedule or in the Declarations applicable to the vehicle the "insured" was "occupying" at the time of the accident.

App. 54 (Four-Vehicle Policy) (emphasis added), 103 (Lincoln Navigator Policy) (same). Both Policies define "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household." App. 35 (Four-Vehicle Policy), 81 (Lincoln Navigator Policy).

## A

First Liberty claims that Adam and Laura do not qualify as "family members" because they do not reside with Paul and Rosanne. The McGeehans counter that the Policies' definition of "family member" is ambiguous based on its use and omission of commas. And their preferred interpretation is that relatives through "blood" or "marriage" automatically qualify as family members, regardless of where they live, while those related through "adoption" are only covered if they reside in the policyholders' household.[1]

---

[1] The McGeehans also argue that First Liberty failed to include "facts regarding the issue of Adam and Laura McGeehan's residency" in its "Concise Statement of Material Facts" before the District Court, in violation of the Western District of Pennsylvania's Local Rule 56(b)(1). Appellants' Br. 25. But because First Liberty filed a Concise Statement of Material Facts, and this rule does not require perfection in this regard, we do not find relief warranted on this basis. *See United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) (holding that district courts have discretion to "waive a requirement of its local rules in appropriate circumstances").

5

"Under Pennsylvania law, an insurance contract is ambiguous where it: '(1) is reasonably susceptible to different constructions, (2) is obscure in meaning through indefiniteness of expression, or (3) has a double meaning.'" *Viera*, 642 F.3d at 419 (quoting *Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 163 (3d Cir. 2002)). "Straightforward language in an insurance policy should be given its natural meaning." *Lawson*, 301 F.3d at 162. Parties' disagreement on the proper construction of a provision does not render it ambiguous. *Trombetta v. Raymond James Fin. Servs., Inc.*, 907 A.2d 550, 562 (Pa. Super. Ct. 2006). Whether a contract is ambiguous is a question of law for the court to decide. *Id.* at 561–62; *Thomas Rigging & Constr. Co., Inc. v. Contraves, Inc.*, 798 A.2d 753, 755 (Pa. Super. Ct. 2002). We agree with the District Court's well-reasoned conclusion that the Policies' definition of "family member" is not ambiguous and requires that an insured individual, however related to the policyholders, reside in the policyholders' household.

First, we reject the McGeehans' argument that the "last antecedent rule" confirms the definition's ambiguity and supports their reading of it. "Th[is] rule provides 'that qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding and not to others more remote.'" *Viera*, 642 F.3d at 418 (quoting *Stepnowski v. Comm'r of Internal Revenue*, 456 F.3d 320, 324 (3d Cir. 2006)). This rule, however, is "not an absolute and can assuredly be overcome by other indicia of meaning." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 365 (3d Cir. 2004) (quoting

6

*Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).  And "[w]here the meaning of the contract language is clear, the last-antecedent rule should not be used to create ambiguity."  *Viera*, 642 F.3d at 419.  When the words of the modifying phrase apply "as much to the first and other words as to the last," the language plainly applies to all elements of the series. *Midboe v. State Farm Mut. Auto. Ins. Co.*, 433 A.2d 1342, 1347 (Pa. 1981) (quoting *Commonwealth v. Rosenbloom Fin. Corp.*, 325 A.2d 907, 909 (Pa. 1974)).

As First Liberty points out, "[t]he clause 'who is a resident of your household' references the word 'person,' which in turn denominates a '[f]amily member.'" Appellee's Br. 26.  Therefore, "who is a resident of your household" most naturally and unambiguously applies to all relations in the series.  In other words, as First Liberty rightly frames the analysis, the modifying phrase, "who is a resident of your household" cannot grammatically only modify the last antecedent, "adoption."  Appellee's Br. 26. We thus "refrain from torturing the language of a policy to create ambiguities where none exist."  *Pilosi*, 393 F.3d at 363 (quoting *McMillan v. State Mut. Life Assur. Co. of Am.*, 922 F.2d 1073, 1075 (3d Cir. 1990)).

We agree with the District Court that even assuming the McGeehans are correct— that placing a comma after "marriage" and before "or adoption" and another comma after "adoption" and before "who is a resident" would clarify the definition's meaning—"it does not necessarily follow that the language as presently written is ambiguous as a

7

matter of law." *First Liberty Ins. Corp. v. McGeehan*, 381 F. Supp. 3d 478, 483 (W.D. Pa. 2019).

We also reject the McGeehan's "plausible rationale" for their interpretation—that "[r]equiring adopted family members to also reside in the insured's household provides insurance carriers with an additional safeguard against potential exploitation of the otherwise laudable adoption process, aimed solely to provide coverage to an individual who might otherwise have no coverage, irrespective of any real closeness in relationship." Appellants' Br. 20. As noted by the District Court, "[i]t seems unlikely . . . that individuals will undertake the time-consuming and costly process of legal adoption – along with all of the potential ensuing expenses and responsibilities related to legal guardianship – merely for the hypothetical benefit of expanding the adoptee's access to insurance benefits." *McGeehan*, 381 F. Supp. 3d at 485. We also agree with the District Court's analysis and conclusion that the McGeehans' expert testimony is inadmissible under Federal Rule of Evidence 702 because "questions of ambiguity or contractual meaning . . . are questions of law for th[e] Court to resolve." *Id.*

We thus will affirm the District Court's holding that the Policies' definition of "family member" is unambiguous and that all categories of people it describes must be residents of the policyholders' household.

**B**

Next, we must determine whether Adam and Laura were "residents" of Paul and

Rosanne's household and thus "family members."  The Policies do not define a "resident," so we must look to Pennsylvania common law.  In *Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co.*, the Pennsylvania Superior Court interpreted the word "resident" in a materially identical auto insurance provision.  545 A.2d 343, 344 n.1 (Pa. Super. Ct. 1988) ("'[F]amily member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." (quoting auto insurance policy)).  In that case, the driver was a child of divorced parents, and the insurance policy belonged to her father.  *Id.* at 345.  During the relevant time period, she lived primarily with her mother, and her visits to her father's house were "sporadic."  *Id.*  She nonetheless kept "a closet or two full of clothes at her father's house, approximately forty pairs of shoes, books, cosmetics, stuffed animals, tennis equipment, and a pet rabbit," and she received mail there.  *Id.*  In prior years, she had spent more time at her father's house, and she planned to live with him during the upcoming summer, before starting college.  *Id.*

The Superior Court interpreted "family member" to include only those "who actually reside in the household of the insured."  *Id.* at 346.  It found that the child's belongings were at her father's house "for convenience and did not evidence that she physically lived there."  *Id.*  The court held that "as a matter of physical fact," the driver resided at her mother's house at the time of the accident.  *Id.*; *cf. Krager v. Foremost Ins. Co.*, 450 A.2d 736, 737 (Pa. Super. Ct. 1982) (finding residency established under an

9

analogous policy where the plaintiff lived with his mother from April through November, including at the time of the accident).

Unlike a person's domicile, which is a "matter of intention," one's residence is "a physical fact." *Laird v. Laird*, 421 A.2d 319, 321 (Pa. Super. Ct. 1980). Residency requires "at the minimum, some measure of permanency or habitual repetition." *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 965 (Pa. Super. Ct. 2007) (quoting *Erie Ins. Exch. v. Weryha*, 931 A.2d 739, 744 (Pa. Super. Ct. 2007)). Here, the physical facts, as set forth by the parties and as evidenced by the record (including Adam and Laura's deposition transcripts), do not demonstrate that Adam and Laura were "residents" of Paul and Rosanne's household. As in *Amica*, Adam's past residency at the home, intended future visits, maintenance of many belongings, and receipt of mail do not establish residency. *See* 545 A.2d at 345–46. Nor do his and Laura's periodic visits or other ties to the Erie area. We thus will affirm the District Court's conclusion that Adam and Laura are not "family members" under the Policies because they do not reside in Paul and Rosanne's household.

### III

For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of First Liberty.

10