J-S14010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TIMOTHY MEYERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| LVD ACQUISITIONS, LLC D/B/A | : | |
| OASIS INTERNATIONAL | : | |
| | : | |
| Appellee | : | No. 1740 MDA 2016 |

Appeal from the Order Entered September 23, 2016
In the Court of Common Pleas of Mifflin County
Civil Division at No(s):  CP-44-CV-261-2015

BEFORE:   GANTMAN, P.J., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED MARCH 28, 2017**

Appellant, Timothy Meyers, appeals from the order entered in the Mifflin County Court of Common Pleas, which granted summary judgment in favor of Appellee, LVD Acquisitions, LLC., d/b/a Oasis International.   We affirm.

In its opinion, the trial court correctly set forth the relevant facts of this case.  Therefore, we have no reason to restate them.  We add only the following fact: Appellee is the manufacturer of the water cooler at issue.

Procedurally, on February 17, 2015, Appellant filed a complaint against Appellee, alleging strict liability for a design defect, negligent design and/or maintenance, and breach of the implied warranty of fitness for a particular purpose.  Appellee answered the complaint on April 27, 2015.  On June 6,

_____

*Retired Senior Judge assigned to the Superior Court.

2016, Appellee filed a motion for summary judgment to dismiss all of Appellant's claims. Appellant timely filed a response in opposition to Appellee's summary judgment motion on June 30, 2016. The court held oral arguments for the summary judgment motion on July 14, 2016, and on September 23, 2016, the court entered summary judgment and dismissed all of Appellant's claims. On October 20, 2016, Appellant timely filed a notice of appeal. The court ordered Appellant on October 21, 2016, to file a Rule 1925(b) statement, which Appellant timely filed on November 7, 2016.

Appellant raises three issues for our review:

> DID THE TRIAL COURT [ERR] IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS IT RELATES TO APPELLANT'S STRICT LIABILITY CLAIM[?]
>
> DID THE TRIAL COURT [ERR] IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS IT RELATES TO APPELLANT'S NEGLIGENT DESIGN AND/OR MAINTENANCE-PRODUCT LIABILITY CLAIM[?]
>
> DID THE TRIAL COURT [ERR] IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS IT RELATES TO APPELLANT'S BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE CLAIM[?]

(Appellant's Brief at 7).

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of Am.*, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing

- 2 -

and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

***Miller v. Sacred Heart Hosp.***, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted). Our scope of review is plenary. ***Pappas v. Asbel***, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment:

[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the

material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006)

(internal citations and quotation marks omitted).

Preliminarily, we observe:

In this Commonwealth, the pleadings must define the issues and thus every act or performance essential to that end must be set forth in the complaint. The purpose behind the rules of pleading is to enable parties to ascertain, by utilizing their own professional discretion, the claims and defenses asserted in the case. This purpose would be thwarted if courts, rather than the parties, were burdened with the responsibility of deciphering the causes of action from a pleading of facts which obscurely support the claim.

While it is not necessary that the complaint identify the specific legal theory of the underlying claim, it must apprise the defendant of the claim being asserted and summarize the essential facts to support that claim. If a plaintiff fails to properly plead a separate cause of action, the cause he did not plead is waived.

*Grossman v. Barke*, 868 A.2d 561, 568 (Pa.Super. 2005), *appeal denied*,

585 Pa. 697, 889 A.2d 89 (2005) (internal citation omitted).

With regard to Appellant's strict liability claim:

Strict liability allows a plaintiff to recover where a product in a defective condition unreasonably dangerous to the user or consumer causes harm to the plaintiff. There are three different types of defective conditions that can give rise to a strict liability claim: design defect, manufacturing defect, and failure-to-warn defect. … A product is

defective due to a failure-to-warn where the product was distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product.

…[A] plaintiff raising a failure-to-warn claim must establish only two things: that the product was sold in a defective condition unreasonably dangerous to the user, and that the defect caused plaintiff's injury. To establish that the product was defective, the plaintiff must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product unreasonably dangerous. For the plaintiff in a failure-to-warn claim to establish the second element, causation, the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller. If the plaintiff fails to establish either of these two elements, the plaintiff is barred from recovery as a matter of law.

*Phillips v. A-Best Products Co.*, 542 Pa. 124, 131, 665 A.2d 1167, 1170-71 (1995) (internal citations and quotation marks omitted).

Instantly, Appellant argues on appeal that Appellee failed to warn him of the risks/dangers of the water cooler, to support Appellant's "design defect" claim. Importantly, Appellant did not allege a failure-to-warn defect in his complaint. Instead, he alleged that the water cooler had a design defect. Appellant first mentioned a failure-to-warn theory on June 30, 2016, in his response to Appellee's motion for summary judgment. Appellant's design defect claim and his failure-to-warn claim are distinct causes of actions. ***See id.*** Therefore, Appellant waived any failure-to-warn claim because he did not plead it in his complaint.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Aaron L.

Gingrich, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed September 23, 2016 at 2-6) (finding: **(1)** Appellant chose to place water cooler directly on hardwood floor without protecting surface underneath; risk that area surrounding water cooler might get wet is well-known, inherent "risk" of using water cooler; Appellant's claim fails under consumer expectations theory because risk water cooler might leak is knowable to ordinary consumer and is not dangerous beyond reasonable consumer's expectations; under risk-utility test, Appellant's claim requires expert testimony to identify existence of defective condition in water cooler and how that defective condition caused Appellant's damages; Appellant acknowledges he cannot testify as to these technical matters, yet he failed to procure expert witness; rather, Appellant relies on statements of Mr. Neff, who allegedly said he fixed defect in valve, which statements are inadmissible hearsay; functioning of water cooler, advantages and disadvantages of different designs, and availability of alternative designs are technical matters which also require expert testimony; Appellant admits he does not have requisite knowledge concerning relevant risk-utility factors; Appellant cannot maintain claim under risk-utility test because he did not procure expert and cannot produce evidence to satisfy necessary elements of his claim; **(2)** again, Appellant acknowledges that he does not know inner workings of water coolers, so he

requires expert testimony to demonstrate that Appellee negligently designed and/or maintained water cooler; as Appellant cannot explain how Appellee negligently designed or maintained water cooler, his claim cannot go to jury; Appellant's documents appended to his response to summary judgment describing water cooler as "faulty" are unauthenticated hearsay; **(3)** Appellant purchased water cooler for ordinary purpose, and he chose particular water cooler because it was what Berube's had in stock; Berube's did not recommend particular type of water cooler to Appellant; Appellant did not inform Berube's about any particular needs Appellant had when purchasing water cooler).  Accordingly, we affirm based on the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2017

## IN THE COURT OF COMMON PLEAS OF MIFFLIN COUNTY, PENNSYLVANIA

TIMOTHY MEYERS,
    Plaintiff,

    v.                                    CP-44-CV-261-2015

LVD ACQUISITIONS,
LLC d/b/a OASIS
INTERNATIONAL,
    Defendant.

### ORDER

AND NOW, this ___23rd___ day of September, 2016, after Oral Argument held July 14, 2016, and upon consideration of the parties' briefs and the relevant law, it is hereby ORDERED and DECREED that Defendant's Motion for Summary Judgment is **GRANTED**.

### FINDINGS OF FACT

On April 4, 2014, Plaintiff purchased three water coolers from Stephanie Neff d/b/a Berube's Crystal Clear Water, LLC ("Berube's" hereafter). Robert Neff of Berube's delivered the three coolers to Plaintiff's home and installed the items. Plaintiff placed one of the coolers ("Water Cooler" hereafter), which contained a five-gallon bottle, on his hardwood floor in the living room, sitting room, wet bar area. He did not place a mat or any other form of protection under the Water Cooler.

Within a week of the installation, Plaintiff noticed several floorboards near the Water Cooler had heaved. Plaintiff avers the floorboards heaved due to a leak of the Water Cooler. Plaintiff never observed the Water Cooler leaking or saw any puddles of water on the floor. Nor could Plaintiff recall how much water was left in the five-gallon bottle, upon noticing the heaved boards. Plaintiff could only recall that "it wasn't a huge leak because there was still a lot of water in the bottle." (Meyers Dep. 22:19-23:1)

Plaintiff called Mr. Neff who removed the Water Cooler from Plaintiff's home. Mr. Neff repaired the Water Cooler, returned it to Plaintiff's residence and gave Plaintiff a new water bottle. Oasis

- 1 -



International ("Defendant" hereafter) did not manufacture the original or the substituted water bottle that was used in the Water Cooler. Plaintiff does not know what Mr. Neff did to repair the Water Cooler while it was out of his possession.

## DISCUSSION

Pursuant to the Pennsylvania Rules of Civil Procedure, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035.2. When the party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action which would require the issues to be presented to the jury, the court must grant summary judgment. *Lance v. Wyeth*, 624 Pa. 231, 258 (2014). Summary judgment may be entered only in those cases that are clear and free from doubt. *Johnson v. Harris*, 615 A.2d 771 (Pa. Super. 1992).

Furthermore, a court may consider only pleadings, depositions, answers to interrogatories, admissions and affidavits, and reports signed by an expert witness. Pa R.C.P. 1035.1. As such, this Court will only consider evidence that would be admissible at trial and strikes all inadmissible evidence from the record in consideration of Defendant's Motion for Summary Judgment.

Count 1- Strict Liability Defect in Design- Product Liability

In a design defect case, a Plaintiff must prove that a seller, distributor or manufacturer placed a product on the market in a defective condition. *Tincher v. Omega Flex*, 104 A.3d 328, 384 (2014). The Court will not presume a product to be defective until a plaintiff affirmatively proves otherwise. In Pennsylvania, a plaintiff can prove a defective condition by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer (the consumer expectations test), or (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions (the risk-utility test). *Id.* at 401.

-2-

The consumer expectations test defines a defective condition "as a condition, upon normal use, dangerous beyond the reasonable consumer's contemplations." *Id.* at 387. A product is not defective if the ordinary consumer would reasonably anticipate and appreciate the dangerous condition of the product and the attendant risk of injury of which the plaintiff complains. *Id.* The nature of the product, the identity of the user, the product's intended use and user, and any express or implied representations by the manufacturer or other seller are among the relevant considerations when assessing the reasonable consumer's expectations. *Id.*

Here, Plaintiff chose to place the Water Cooler directly on his hardwood floor without any kind of mat or protective surface underneath. The risk that the area surrounding the Water Cooler might get wet during the course of its use is a well-known and inherent 'risk' of using a water cooler. Furthermore, no express implied representations were given to Plaintiff by Berube's or Defendant. The Court finds this risk in not unknowable or unacceptable to the ordinary consumer and is not dangerous beyond the reasonable consumer's contemplations. Therefore, Plaintiff cannot prove that the water cooler was defective under the consumer expectations theory.

Under the risk-utility theory, the test consists of a cost-benefit analysis. *Id.* at 389. Factors relevant to this risk-utility analysis include: (1) the product's usefulness and desirability, (2) its safety aspects, (3) the availability of a substitute product which would meet the same need and not be as unsafe, (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility, (5) the user's ability to avoid danger by exercising care when using the product, (6) the user's anticipated awareness of the dangers inherent in the product either because of general public knowledge of the obvious condition of the product, or because of the existence of suitable warnings and instructions, and (7) the feasibility of spreading the loss by setting the price of the product or carrying liability insurance. *Id.* at 389-90.

- 3 -

In reviewing these factors, Plaintiff acknowledges that he cannot testify as to the alleged defect in the Water Cooler. (Meyers Dep. 37:17-18.) Nor can he articulate what made the Water Cooler defective or specify what measures could be taken to remedy the alleged defect. (Meyers Dep. 37:11-18.) Yet, Plaintiff has not procured an expert to testify regarding these technical matters. Rather, Plaintiff relies on a statement made by Mr. Neff, whereby Mr. Neff informed Plaintiff that he had fixed a defect in a valve.

The functioning of the Water Cooler, the advantages and disadvantages of different designs and the availability of alternative designs are technical matters that are not within the range of ordinary training, knowledge, intelligence, and experience of the jury. The Court finds Plaintiff cannot maintain his claim under a risk-utility theory. Plaintiff admits he does not have the requisite knowledge concerning the risk-utility factors. Therefore, Plaintiff's claim requires expert testimony to identify the existence of a defective condition in the Water Cooler and how that defective condition caused Plaintiff's damage. Plaintiff does not have an expert, nor can he produce evidence, necessary to establish the elements of his design defect claim and therefore cannot succeed under the risk-utility theory.

Plaintiff avers that he can prove his case to a jury, by submitting an exhibit offered at deposition that demonstrates an issue with the drain plug that caused water to leak onto Plaintiff's floor. However, Plaintiff has offered no affidavits, as required by Rule 1035.1, or any other evidence authenticating any of the exhibits offered in support of his argument. Where a party simply appends exhibits to a summary judgment briefing without authenticating documentation, those documents cannot be considered in support of the brief. *U.S. Bank, N.A., v. Harlow,* Case No. 889 EDA 2015, 2016 Pa. Super. Unpub. LEXIS 1183, at 14 (Pa. Super. April 12, 2016). As such, Plaintiff's exhibits are inadmissible and cannot be considered by the Court. Defendant is entitled to summary judgment on this claim.

Count 2- Negligent Design and/or Maintenance- Product Liability

To prove a negligence claim, a plaintiff must establish (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *Brandon v. Ryder Truck Rental, Inc.*, 34 A.3d 104, 108 (Pa. Super. 2011). A plaintiff must identify and prove the existence of a specific defect in the design or maintenance of a product to show that the manufacturer breached a duty to the plaintiff and to succeed on a negligent design or maintenance claim. *Id.* Where the subject matter of the inquiry involves special skills and training not common to a lay person, a plaintiff must present expert testimony in order to prove both a defect and show that the defect caused damages. *Id.*

As stated above, Plaintiff has acknowledged that he does not know the inner workings of water coolers. (Meyers Dep. 37:17-18.) Plaintiff, therefore, requires expert testimony to demonstrate that Oasis negligently designed and/or maintained the Water Cooler. As Plaintiff cannot provide how Defendant was negligent in the design or maintenance of the Water Cooler, Plaintiff's claim could not be proven to a jury. While Plaintiff argues that he does not require an expert to support his claims because he has attached a document to his summary judgment response describing the Water Cooler as "faulty," this document is unauthenticated hearsay. Defendant is entitled to summary judgment on this claim.

Count 3- Breach of Implied Warranty of Fitness for a Particular Purpose

To establish the existence of an implied warranty of fitness for a particular purpose, the seller must know, at the time of contracting: (1) any particular purpose for which the goods are required, and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods. 13 Pa. C.S.A. § 2315. A claim for breach of warranty of fitness for a particular purpose "is based upon a special reliance by the buyer on the seller to provide goods that will perform a specific use envisaged and communicated by the buyer." *Gall v. Allegheny County Health Dep't*, 555 A.2d 786, 790 (Pa. 1989)

- 5 -

Further, "[a] 'particular purpose' differs from the ordinary purpose for which goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Id.*

As Plaintiff so aptly stated in his deposition, the Water Cooler was not purchased as "an apparatus to bathe in." (Meyers Dep. 16:14-21.) Plaintiff purchased the Water Cooler for drinking purposes, solely to drink water. (Meyers Dep. 16:14-17) Furthermore, Plaintiff chose the particular Water Cooler because it was what Berube's had in stock. (Meyers Dep. 16:4-6.) Berube's did not provide any recommendations to Plaintiff as to a particular type of cooler that he should purchase, nor did Plaintiff inform Berube's about any particular needs he had in purchasing the water cooler. (Meyers Dep. 16:4-17:1.) As such, the Court finds Plaintiff does not have a cognizable claim for breach of implied warranty of fitness for a particular purpose and Defendant is entitled to summary judgment on this cause of action.

## CONCLUSION

Summary Judgment should be granted to the movant unless the opposing party offers competent evidence, which would be admissible at trial, showing there is a genuine issue as to a material fact that would warrant submitting the case to the trier of fact. Here, Plaintiff has failed to provide evidence, which would be admissible at trial, showing there are genuine issues of material fact that would warrant submitting the case to the trier of fact. Defendant's Motion for Summary Judgment is granted.

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THIS DOCUMENT HAS
BEEN FILED IN THIS CASE.
PROTHONOTARY, MIFFLIN COUNTY, PA

DATE: 9/23/16

BY THE COURT:

AARON L. GINGRICH
JUDGE

DISTRIBUTION: SEE NEXT PAGE

- 6 -

c:  Matthew Slivinski, Esq., Slivinski Law Offices
        111 N. High Street, Suite One, Selinsgrove, PA 17870
    Timothy S. Searer, Esq., Tucker Arensburg, P.C.
        P.O. Box 867, Lewistown, PA 17044
    C. Darcy Jalandoni, Esq., Porter Wright Morris & Arthur LLP
        41 South High Street, Suites 2800-3200, Columbus, OH 43215-6100
    File