J-A08026-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SARA C. BEUTLER, INDIVIDUALLY AND IN HER CAPACITY AS THE ADMINISTRATOR OF THE ESTATE OF RANDOLF BEUTLER, DECEASED, AND ESTATE OF RANDOLF S. BEUTLER, BY AND THROUGH ITS ADMINISTRATOR | : | No. 2095 EDA 2025 |
| | : | |
| Appellants | | |

Appeal from the Order Entered July 2, 2025
In the Court of Common Pleas of Chester County Civil Division at No(s):
2024-10894-MJ

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED JUNE 16, 2026**

Appellants, Sara C. Beutler, individually and in her capacity as the administrator of the estate of Randolf S. Beutler ("Decedent"), and the estate of Decedent through its administrator, appeal from the order entered in the Chester County Court of Common Pleas, which granted summary judgment in favor of Appellee, Erie Insurance Exchange, in this declaratory judgment action.  We affirm.

The relevant facts and procedural history of this matter are as follows. Decedent and Mrs. Beutler owned four automobiles and a motorcycle. Appellee issued an insurance policy covering the four automobiles.

Progressive issued an insurance policy to cover the motorcycle. On August 24, 2018, Decedent executed a waiver of stacked coverage. At the time of the waiver, there were four vehicles insured under the policy: Auto 1, a 2009 Kia Spectra; Auto 2, a 2001 Toyota Tacoma; Auto 3, a 2017 Hyundai Tucson; and Auto 4, a 2016 Toyota Tundra. On March 21, 2024, Erie issued an amendment to the insurance policy, titled "Declarations" (amended), in which Auto 3 was deleted from the policy, and Auto 5 (a 2024 Toyota Rav4) was added to the policy.

On April 29, 2024, Decedent was struck from behind by a motor vehicle while riding his motorcycle on the highway. He died as a result of the accident. Subsequently, Appellants made a claim for underinsured motorist ("UIM") benefits under the Progressive policy. Progressive tendered the full UIM limit of $300,000.00. Thereafter, Appellants made a claim for stacked UIM benefits under the Erie policy.

On December 5, 2024, Appellee brought a declaratory judgment action under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701-1799.7 ("MVFRL"). Appellee stated that it had issued a policy to Decedent, which provided $100,000.00 per person or $300,000.00 per accident in UIM coverage. Under the policy, Decedent had executed a valid stacking waiver on August 24, 2018. Further, Appellee contended that the March 21, 2024 amendment had not constituted a purchase of new coverage. Rather, despite substitutions of vehicles, the policy always covered four vehicles as well as provided for $100,000.00 per person/$300,000.00 per

accident in UIM coverage. As a result, no new stacking waiver was required. Appellee asserted that none of the four insured vehicles was involved in the accident. On that basis, Appellee sought a declaratory judgment in its favor finding that Appellants were not entitled to stacked UIM coverage under the policy, and, thus, Appellants were entitled to recover solely $100,000.00 in UIM benefits under the policy. *See* 75 Pa.C.S.A. § 1738(c).

On January 15, 2024, Appellants filed their answer with a new matter and counterclaim, demanding that the court permit Appellants to pursue stacked UIM benefits in the amount of $400,000.00. Appellants specifically denied that the August 24, 2018, stacking waiver referenced in Appellee's complaint was applicable to the coverages in effect at the time of the April 29, 2024 accident. Appellants contended that Appellee deleted and added vehicles to the policy from August 2018 to April 2024. Appellants further contended that, when policy changes were made on March 21, 2024, Appellee was required to offer an additional stacking waiver, and, since Appellee failed to do so, there was no valid stacking waiver in effect at the time of the accident. Accordingly, Appellants averred Appellee had an obligation to provide UIM stacked coverage of $100,000.00 per person/$300,000.00 per accident with four vehicles, thus, providing a total of $400,00.00 in UIM coverage under the policy.

In their counterclaim, Appellants alleged Appellee caused the policy to be changed in March of 2024 to provide Appellee with the greatest benefit and to the detriment of the insureds. Specifically, Appellants alleged that, in the

- 3 -

March 21, 2024, "Declarations" (amended) page, Appellee used the phrasing "deleting" and "adding" an auto as opposed to "substituting" an auto. As a result, Appellants insisted that Appellee was required to obtain a stacking waiver when the March 21, 2024 policy changes were made, and that the named insureds did not execute such a waiver. Appellants alleged that due to this failure, Appellee had an obligation to provide UIM stacked coverage. Thus, Appellants sought a declaratory judgment in their favor and against Appellee.

On February 21, 2025, Appellee filed a reply to the new matter and counterclaim. While Appellee admitted that an amendment had been made to the policy, it expressly denied that it had caused or unilaterally chose to amend the policy. Rather, Appellants had requested the deletion and addition of vehicles, as well as decided the type and amount of coverage under the policy. Thus, the amendment did not constitute a purchase of new coverage under Subsection 1738(c) of the MVFRL, since the number of vehicles and the amount of UIM coverage for each vehicle insured under the policy remained the same.

On May 23, 2025, Appellee filed a motion for summary judgment, essentially reiterating its prior assertions that the August 24, 2018 stacking waiver remained in place at the time of the accident. At the time of the waiver, the policy insured four vehicles, and at the time of the March 21, 2024 amendment, it continued to insure four vehicles. Appellee averred there was no dispute that Appellee did not charge a premium for a fifth vehicle, and the

UM/UIM coverage remained the same prior to and after the March 21, 2024, "Declarations" (amended). Appellee contended that Subsection 1738(c) of the MVFRL states that when purchasing uninsured ("UM") or UIM coverage for more than one vehicle under a policy, the named insured shall be provided the opportunity to waive the stacked limits of coverage. However, because Decedent did not **purchase** coverage during the 2024 amendment, Appellee had no obligation to provide the insureds with new stacking waivers. Accordingly, Appellee averred there was no genuine issue of material fact, and, as a matter of law, Appellants were entitled to solely $100,000.00 in UIM coverage.

That same day, Appellee filed a motion for protective order, claiming that it had produced a full and complete response to Appellants' interrogatories, but Appellants had served Appellee with a letter of deficiency seeking specific, supplemental written discovery. Appellee contended the additional discovery requests sought confidential, proprietary business information concerning Appellee's internal business practices, training protocols, unrelated underwriting materials, and internal discussions within Appellee. Appellee sought to preclude Appellants from pursuing "oppressive discovery that [was] irrelevant" to the claims at issue in the case. (*See* Motion for Protective Order, 5/23/25, at 5).

On June 12, 2025, Appellants filed a response in opposition to the motion for protective order. Appellants averred the discovery requests were made in good faith and within the parameters of allowable discovery.

Specifically, Appellants averred they sought information regarding why Appellee "chose to amend the policy by deleting a vehicle and then adding a vehicle, when its prior amendment practices were to simply replace an existing auto." (*See* Appellants' Response, 6/12/25, at 2).

On June 24, 2025, Appellants filed a response in opposition to the motion for summary judgment. Appellants averred that the entry of summary judgment would be premature as there were outstanding discovery requests. They contended the additional requested discovery was germane to the issues presented and would aid in establishing a material fact, *i.e.*, whether the March 21, 2024, "Declarations" (amended) constituted a purchase under Subsection 1738(c) which would require Appellee to obtain a new stacking waiver.

On July 2, 2025, the trial court entered an order granting the motion for a protective order, and an order granting summary judgment in favor of Appellee and against Appellants. In the order granting summary judgment, the court noted that in the March 21, 2024 amendment, Decedent had removed one automobile and added another and that, pursuant to Subsection 1738(c) of the MVFRL and established case law, this type of amendment did not require a new stacking waiver. Therefore, because Decedent had executed a valid stacking waiver on August 24, 2018, Appellants were barred from recovering any additional UIM benefits beyond the $100,000 limit.

On July 28, 2025, Appellants timely filed a notice of appeal. On July 28, 2025, the court ordered Appellants to file a Pa.R.A.P. 1925(b) statement of

errors complained of on appeal. On August 14, 2025, Appellants timely complied.

On appeal, Appellants raise the following issues for review:

1. Whether the July 2, 2025 order granting [Appellee's] motion for summary judgment should be reversed because the changes made to the policy on March 21, 2024 were explicitly not that of a replacement vehicle, thereby requiring a signed stacking waiver?

2. Whether the July 2, 2025 order granting [Appellee's] motion for protective order should be reversed because the requested discovery was relevant to the defenses and counterclaim of [Appellants] and within the permissible scope of discovery?

3. Whether the July 2, 2025 order granting [Appellee's] motion for summary judgment should be reversed because the motion for summary judgment was premature as there was additional discovery to be conducted by [Appellants]?

(Appellants' Brief at 6-7) (suggested answers omitted).[1]

In their first issue, Appellants argue that the March 21, 2024 amendment added a vehicle and deleted a vehicle, which Erie had identified as a fifth vehicle on the policy. Therefore, Appellants contend that the policy "undisputably demonstrates a vehicle was not replaced on the [p]olicy." (**See** Appellants' Brief at 24). Therefore, Appellants argue that the court should have given full effect to the clear and unambiguous contractual language requiring a new stacking waiver, and that this Court should grant relief. We disagree.

_____

[1] We have reordered Appellants' issues for purposes of analysis.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. ***Mee v. Safeco Ins. Co. of America***, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

***Miller v. Sacred Heart Hosp.***, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted). Our scope of review is plenary. ***Pappas v. Asbel***, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). Furthermore, "[o]ur consideration is not limited to the pleadings but includes, as well, depositions, interrogatories, responses to requests for admissions, and affidavits filed by the parties." ***Basile v. H & R Block, Inc.***, 777 A.2d 95, 101 (Pa.Super. 2001), *appeal denied*, 569 Pa. 714, 806 A.2d 857 (2002) (citing ***White v. Owens-Corning Fiberglas, Corp.***, 668 A.2d 136, 142 (Pa.Super. 1995), *appeal denied*, 546 Pa. 648, 683 A.2d 885 (1996)).

In reviewing a trial court's grant of summary judgment:

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is

no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted). Further, when interpreting Pennsylvania statutes, the question is an issue of law over which our scope of review is plenary, and our standard of review is *de novo*. *Everhart v. PMA Ins. Group*, 595 Pa. 172, 938 A.2d 301 (2007).

"The concept of stacking relates to the ability to add coverages from other vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." *Erie Ins. Exch. v. Mione*, ___ Pa. ___, 289 A.3d 524, 526 n.2 (2023) (citation omitted).

Regarding the stacking of UM and UIM benefits, and the options to waive such coverage, the Pennsylvania Motor Vehicle Code provides:

> **§ 1738. Stacking of uninsured and underinsured benefits and option to waive**
>
> **(a) Limit for each vehicle.--**When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.
>
> **(b) Waiver.--**Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.
>
> **(c) More than one vehicle.--**Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738. Under Section 1738, "stacked UM/UIM coverage is the default coverage available to every insured and provides stacked coverage on all vehicles and all policies." *Gallagher v. GEICO Indemnity Company*, 650 Pa. 600, 611, 201 A.3d 131, 137 (2019). Nevertheless,

> [u]nder the MVFRL, insureds can choose to waive stacked coverage. If an insured decides to waive stacked coverage, then the insured's premiums must be reduced to reflect the

different cost of coverage. Importantly, the MVFRL makes clear that to effectuate a waiver of UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage. This waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver.

*Id.* (internal citations omitted).

[A]n insurance company must offer an insured the opportunity to waive stacking of UIM coverage limits whenever [he] purchases UIM coverage "for more than one vehicle under a policy." [75 Pa.C.S.A.] § 1738(c). If an insurance company does not obtain a stacking waiver at that time, the amount of UIM coverage available to an insured is "the sum of the limits for each motor vehicle as to which the injured person is an insured." [75 Pa.C.S.A. §] 1738(a).

*Barnard v. Travelers Home and Marine Insurance Company*, 654 Pa. 604, 614, 216 A.3d 1045, 1051 (2019). In such cases, the application of Subsection 1738(c) turns upon the meaning of the term "purchase." *See id.*

[U]nder a plain meaning analysis of Subsection 1738(c), an insured purchases UIM coverage when [he] pays to acquire UIM coverage "for more than one vehicle under a policy." 75 Pa.C.S.[A.] § 1738(c). [N]othing in Subsection 1738(c) limits the term "purchase" to an insured's initial purchase of an insurance policy. Rather, the Subsection requires the execution of a new stacking waiver any time an insured pays to obtain UIM coverage for multiple vehicles, regardless of whether this acquisition occurs when an individual initially applies for insurance, or when [he] subsequently pays to obtain additional UIM coverage.

*Barnard, supra* at 614, 216 A.3d at 1051-52 (emphasis omitted).

"In common usage, 'to buy' means to acquire or obtain something from paying for it." *Id.* (citation omitted). Accordingly, "the term 'purchase' requires two things: (1) the acquisition of something; and (2) payment … In

order to satisfy the first, the insured must obtain something that [he] does not already possess." *Id.* at 617, 216 A.3d at 1053. Therefore, "under a plain meaning analysis of Subsection 1738(c), an insured purchases UIM coverage when [he or she] pays to acquire UIM coverage 'for more than one vehicle under a policy.'" *Id.* at 614, 216 A.3d at 1051-52.

Additionally, the subsection "requires the execution of a new stacking waiver any time an insured pays to obtain UIM coverage for multiple vehicles, regardless of whether this acquisition occurs when an individual initially applies for insurance, or when she subsequently pays to obtain additional UIM coverage." *See id.* This is because, essentially, the insured is obtaining something he or she does not already possess—additional UIM coverage for the added vehicle. *Id. See also Kline v. Travelers Personal Security Insurance Company*, 223 A.3d 677, 686-687 (Pa.Super. 2019), *appeal denied*, 661 Pa. 521, 237 A.3d 388 (2020) (applying *Barnard* and holding where an automobile insurance policy at its inception covered one vehicle, insurer was required to offer insured opportunity to execute new waiver of stacked UM/UIM coverage when insured added vehicles to existing policy, thus increasing number of covered vehicles).

In *Barnard*, our Supreme Court distinguished the addition of a vehicle to a policy from the situation where an insured replaces an automobile on the policy with a different automobile. Specifically, "an insured who …. replaced an old vehicle on [his] policy with a newer model does not acquire any more UIM coverage than [he] already has. Rather, [his] payment maintains the

same amount of UIM coverage that [he] acquired previously, making a new stacking waiver unnecessary." **Barnard, supra** at 617, 216 A.3d at 1054.

Subsequently, in **Franks v. State Farm Mutual Automobile Insurance Company**, ___ Pa. ___, 292 A.3d 866 (2023), the Pennsylvania Supreme Court revisited the issue of when a "purchase" occurs under Subsection 1738(c), expanding on the **Barnard** definition and rejecting the general argument that "purchase" as used in Subsection 1738(c) equates with "change." **See Franks, supra**. The Court observed:

> As we explained in **Barnard**, the language employed by the Legislature in Section 1738 is not inherently ambiguous nor does it reflect an ambiguity in context with other aspects of the MVFRL. **Barnard,** [**supra**]. Accordingly, we employed the plain meaning of "purchasing" to determine when an insurer must offer an opportunity to waive stacking on approved forms. Further, "purchase" pertains to UIM/UM coverage rather than the underlying policy itself.
>
> *   *   *
>
> Today we hold that the logic of **Barnard** in construing "purchase" in accord with its plain meaning does not justify [the] [a]ppellants' expansive interpretation equating the term with any "change." The removal of a vehicle from coverage under a multi-vehicle policy under conditions that do not alter the pre-existing coverage or costs relative to the remaining vehicles is not a purchase requiring a renewed express waiver per Subsection 1738(c).

**Franks, supra** at ___, 292 A.3d at 873. Thus, the contemporaneous deletion of one automobile and adding of another automobile, while retaining all other coverage, did not result in the "insured obtaining something he or she does not already possess." **Barnard, supra** at 617, 216 A.3d at 1053. **See also**

***Shipp v. Phoenix Ins. Co.***, 51 A.3d 219, 223-24 (Pa.Super. 2012) (holding that, for purposes of stacking waivers, each time new vehicle replaced existing vehicle, and policy continuously covered same amount of vehicles, no additional waivers were required).

Instantly, the trial court examined the relevant law regarding stacking coverage, and concluded:

> [Appellants stress] that [Appellee] failed to use the term "replaced" when [amending Decedent's] policy, but rather used the terms "deleted" and "added." However, applying the reasoning of ***Shipp***, we conclude the terminology does not alter the nature of [the] transaction. As in ***Shipp***, there was no change in the amount of UIM coverage. The only change was to the identity of the covered vehicle. Before and after the addition of the RAV4 to the policy, the UIM coverage available to [Decedent] was $100,000 per person/$300,000 per accident, unstacked, and insured four vehicles. Just as in ***Shipp***, because no new UIM coverage was purchased, no waiver was needed.

(Order, 7/2/25, at 2-4 n.1).

We agree with the trial court's analysis that the March 1, 2024 amendment to the policy, deleting Auto 3 (2017 Hyundai Tucson) and adding Auto 5 (2024 Toyota Rav4), while not disturbing the remaining coverage, did not constitute a "purchase" under Subsection 1738(c) such that it triggered any renewed requirement to offer or acquire a new stacking waiver. ***See Franks, supra***; ***Barnard, supra***. Regardless of the language used by the amendment, the policy covered four vehicles prior to the amendment and covered four vehicles after the amendment, with exactly the same amount of monetary coverage. ***See id.*** Accordingly, the trial court properly concluded

- 14 -

that there were no genuine issues of material fact and, as a matter of law, Appellee was entitled to summary judgment on its declaratory judgment action. **See Mee, supra**; **Chenot, supra**.

In Appellants' second issue, they contend that the court erred in granting Appellee's motion for protective order during discovery. Appellants aver that the additional discovery was reasonably calculated to answer the question of why the March 21, 2024, amendment indicated "AUTO 3 DELETED. AUTO 5 ADDED" as opposed to using the word "replacement" or "replaced." (**See** Appellants' Brief at 13). According to Appellants, discovery was required to verify the completeness and accuracy of the policy, including the amendments. Appellants conclude they are entitled to relief on these grounds. We disagree.

"Discovery orders are subject to an abuse of discretion standard of review. A trial court may abuse its discretion by making a ruling that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." **King v. Kappa Sigma Fraternity**, 331 A.3d 695, 699 (Pa.Super. 2025) (citations omitted). "The trial court is responsible for '[overseeing] discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure.'" **Berkeyheiser v. A-Plus Investigations, Inc.**, 936 A.2d 1117, 1125 (Pa.Super. 2007) (quoting **PECO**

*Energy Co. v. Insurance Co. of North America*, 852 A.2d 1230, 1233 (Pa.Super. 2004)).

Generally, discovery is liberally permitted "to prevent surprise and unfairness and to allow a fair trial on the merits." *Carlino E. Brandywine, L.P. v. Brandywine Village Associates*, 260 A.3d 179, 195 (Pa.Super. 2021) (internal citations omitted). Pennsylvania Rule of Civil Procedure 4003.1 governs the scope of discovery as follows:

> **Rule 4003.1. Scope of Discovery Generally. Opinions and Contentions**
>
> (a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

Pa.R.C.P. 4003.1(a) (emphasis added). Further, "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Pa.R.C.P. 4003.1(b).

Nonetheless, "fishing expeditions are not to be countenanced under the guise of discovery." *Copestakes v. Reichard-Copestakes*, 925 A.2d 874, 876 (Pa.Super. 2007) (internal citations omitted). Thus, "to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden

or expense," a court may grant a party's motion for a protective order to prohibit or limit the production of otherwise discoverable material "for good cause shown[.]" Pa.R.C.P. 4012(a).

Instantly, the trial court explained:

> [Appellee] seeks a protective order from discovery into business information concerning [Appellee's] internal business practices, training, and operations, including [Appellee's] computer program systems, and depositions of Erie personnel. Because such discovery is irrelevant to the defenses and counterclaim of [Appellants], [Appellee] is entitled to relief. Pa.R.C.P. 4003.1(b) (information sought must be reasonably calculated to lead to the discovery of admissible evidence); 4011(c) (no discovery shall be permitted that is beyond the scope of discovery set forth in Rule 4003.1).

(Trial Court Order, 7/2/25, at 2).

Although Appellants challenge the trial court's reasoning on the basis that the information sought appears reasonably calculated to lead to the discovery of admissible evidence, the question of why the March 21, 2024 amendment used the wording "deleted" and "added" as opposed to replacement or replaced is not dispositive in this matter. Even assuming the policy expressly provided that Auto 5 was a "replacement for" Auto 3, as alleged by Appellants, given that there were no other changes to the coverage, Appellants have not explained how such a "replacement" would constitute a purchase under Subsection 1738(c) triggering any renewed requirement to offer or acquire an express waiver of previously waived stacked UIM coverage. *See Franks*, *supra*; *Barnard*, *supra*. Therefore, because the information

sought was not reasonably calculated to lead to the discovery of relevant, admissible evidence, the trial court did not abuse its discretion in granting Appellee's motion for a protective order.[2] *See King, supra*; *Berkyeheiser, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/16/2026

---

[2] Based upon our disposition of Appellants' first two issues, we need not address Appellants' claim that, assuming the court had erred in granting the motion for protective order, the motion for summary judgment was premature.

- 18 -